**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| COGENT COMMUNICATIONS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DEUTSCHE TELEKOM AG,<br><br>　　　　　Defendant. | Case No. 1:15-cv-1632 LMB/IDD |

**MEMORANDUM IN SUPPORT OF DEFENDANT DEUTSCHE TELEKOM AG'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR**
**<u>FAILURE TO STATE A CLAIM AND LACK OF PERSONAL JURISDICTION</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................4

I.     THE PARTIES' AGREEMENTS ...............................................................................4

       A.     1999 Agreement...............................................................................................4

       B.     Alleged 2004 Oral Agreement .......................................................................5

II.    PROCEDURAL HISTORY.........................................................................................5

STANDARD OF REVIEW ...................................................................................................7

I.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ....................................7

II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION .........................7

ARGUMENT .........................................................................................................................8

I.     COGENT'S CLAIMS ARE UNTIMELY...................................................................8

II.    COGENT'S IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING CLAIMS—
       COUNTS II AND IV—SHOULD BE DISMISSED BECAUSE THEY MIRROR
       COGENT'S CONTRACT CLAIMS. .............................................................................10

III.   THE ALLEGED 2004 ORAL AGREEMENT IS UNENFORCEABLE UNDER THE
       EXPRESS TERMS OF THE 1999 AGREEMENT. .......................................................11

IV.    THE COURT LACKS PERSONAL JURISDICTION OVER COGENT'S CLAIMS
       BASED ON THE 1999 AGREEMENT. ........................................................................12

CONCLUSION.......................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdvanFort Co. v. Mar. Exec., LLC*,
  No. 1:15-cv-220, 2015 WL 4603090 (E.D. Va. July 28, 2015)................................................12

*AEB & Assocs. Design Grp., Inc. v. Tonka Corp.*,
  853 F. Supp. 724 (S.D.N.Y. 1994)........................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................7

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) .................................................................................................13

*Casciano v. JASEN Rides, LLC*,
  109 F. Supp. 3d 134 (D.D.C. 2015) .......................................................................................11

*Corinthian Mortg. Corp v. ChoicePoint Precision Mktg., LLC*,
  Case No. 1:07-cv-832 (JCC), 2008 WL 2776991 (E.D. Va. July 14, 2008) .........................8, 9

*Crussiah v. Inova Health Sys.*,
  No. CV-TDC-14-4017, 2015 WL 7294368 (D. Md. Nov. 19, 2015).......................................14

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)..................................................................................................3, 13, 14

*First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs., Inc.*,
  No. 07–CV–2083 (RRM)(ETB), 2011 WL 1260223 (E.D.N.Y. Mar. 30, 2011).............12, 13

*Goodman v. PraxAir, Inc.*,
  494 F.3d 458 (4th Cir. 2007) ....................................................................................................8

*Guthrie v. Flanagan*,
  No. CIV. A. 3:07CV479, 2007 WL 4224722 (E.D. Va. Nov. 27, 2007) ...................................1

*Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*,
  264 F. Supp. 2d 282 (D. Md. 2003)..........................................................................................2

*Hunter Innovations Co. v. Travelers Indem. Co.*,
  753 F. Supp. 2d 597 (E.D. Va. 2010) .......................................................................................8

*Hunter v. Custom Bus. Graphics*,
  635 F. Supp. 2d 420 (E.D. Va. 2009) .......................................................................................9

*Jones v. Shooshan*,
  855 F. Supp. 2d 594 (E.D. Va. 2012) ...........................................................7, 8, 10

*Mylan Labs., Inc. v. Akzo, N.V.*,
  2 F.3d 56 (4th Cir. 1993) ...........................................................................................7

*O'Ryan v. Dehler Mfg. Co.*,
  99 F. Supp. 2d 714 (E.D. Va. 2000) .......................................................................10

*Spandex House, Inc. v. Travelers Prop. Cas. Co. of Am.*,
  No. 14 CIV. 4251 PAC, 2015 WL 509678 (S.D.N.Y. Feb. 6, 2015) .....................10

*SunTrust Mortgage, Inc. v. Nationwide Equities Corp.*,
  No. 3:12CV330-JRS, 2012 WL 4953120 (E.D. Va. Oct. 16, 2012) .........................2

*Veney v. Wyche*,
  293 F.3d 726 (4th Cir. 2002) .....................................................................................7

*Xereas v. Heiss*,
  933 F. Supp. 2d 1 (D.D.C. 2013) .............................................................................10

**Statutes**

D.C. Code § 12-301(7)....................................................................................................8

N.Y. C.P.L.R. § 213(2) ..................................................................................................8

Va. Code Ann. § 8.01-230 ..............................................................................................8

Va. Code Ann. § 8.01-246 ..............................................................................................8

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ......................................................................7

Federal Rule of Civil Procedure 12(b)(6) ..................................................................6, 7

Defendant Deutsche Telekom AG ("DT"), by counsel, files this Motion to Dismiss the Amended Complaint filed by Cogent Communications, Inc. ("Cogent").

## INTRODUCTION

As explained in DT's motion to dismiss for *forum non conveniens* filed herewith,[1] the controlling written agreement between the parties, executed in 2003 ("2003 Agreement"), requires Cogent's claims, to the extent they are viable, to be heard in Germany.  For purposes of this motion, however, even assuming the 2003 Agreement were inapplicable as Cogent contends, Cogent's claims already fail to state a claim based solely on the allegations in the Complaint.

In its Amended Complaint, Cogent alleges an entirely new contractual relationship between the parties—with entirely new terms—in a transparent attempt to plead around the deficiencies in its original Complaint.  For example:

- In its original Complaint, Cogent alleged that the parties' 1999 written agreement ("1999 Agreement") governed only the New York, New York interconnection point, *see* Compl. (Dkt. No. 1) ¶ 33, but now, after DT filed its Motion to Dismiss, Cogent alleges that the 1999 Agreement covers at least the New York and Ashburn, Virginia interconnection points and possibly all of the parties' interconnection points, *see* Am. Compl. (Dkt. No. 20) ¶¶ 44-45, 67;

- In its original Complaint, Cogent alleged that the 1999 Agreement remained in effect with respect to the New York interconnection, *see* Compl. ¶¶ 31-32, 77-82, but now it alleges that the 1999 Agreement has been "replaced" by an alleged 2004 oral agreement between the parties ("2004 Oral Agreement"), *see* Am. Compl. ¶ 59;

- In its original Complaint, Cogent alleged that the parties had entered into an "implied-in-fact and/or oral agreement" that governed the parties' remaining seven interconnection points, including their interconnection point in Ashburn, Virginia, *see* Compl. ¶¶ 39-40, 42, and that the agreement had only two defined terms, *see id.* ¶¶ 39-53, but now it alleges that there is a single oral contract with multiple defined terms, *see* Am. Compl. ¶¶ 46-59;

---

[1] The Court can dismiss the entire Complaint based on that motion without addressing the arguments raised in the alternative in this motion.  In filing this motion, DT in no way concedes that this Court is the proper forum to adjudicate Cogent's claims or that it possesses personal jurisdiction.  *See, e.g.*, *Guthrie v. Flanagan*, No. CIV. A. 3:07CV479, 2007 WL 4224722, at *3 (E.D. Va. Nov. 27, 2007) (finding that the defendant timely asserted lack of personal jurisdiction by raising the defense in his answer and filing a separate motion to dismiss for lack of personal jurisdiction at the same time that he filed his substantive motion to dismiss).

- In its original Complaint, Cogent alleged that DT had failed to upgrade interconnection capacity at any of the parties' interconnection points since 2011, Compl. ¶ 56, but it now alleges that DT stopped "mitigating congestion" in "recent years," Am. Compl. ¶ 81; and

- In its original Complaint, Cogent alleged that the parties had entered into an oral agreement with respect to Ashburn based on having "exchanged data [there] since February 2005," *see* Compl. ¶¶ 40, 42, but now it alleges that the parties began interconnecting in Ashburn in 2002 under the 1999 Agreement, *see* Am. Compl. ¶ 45.

This flip-flopping demonstrates that Cogent's allegations entirely lack credibility. *See SunTrust Mortgage, Inc. v. Nationwide Equities Corp.*, No. 3:12CV330-JRS, 2012 WL 4953120, at *4 (E.D. Va. Oct. 16, 2012) ("[A] party . . . cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version.")); *Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F. Supp. 2d 282, 290 (D. Md. 2003) ("It is unseemly that plaintiffs have changed their position about the substance of their oral agreements with VW in order to bolster their legal position. Their original allegations draw into question the veracity of their present allegations and can be used to impeach whatever sworn testimony they give in the future."). But even assuming the truth of these new allegations (solely for purposes of this Motion), Cogent's Amended Complaint should be dismissed for failure to state a claim.

First, Cogent's claims are untimely on the face of the Amended Complaint. Although Cogent removes allegations from its initial Complaint that DT stopped increasing interconnection capacity—and thereby breached the alleged agreements—in 2011, *see* Compl. ¶ 56, in the filing before Germany's Federal Network Agency for Electricity, Gas, Telecommunications, Post, and Railway ("FNA") attached as an exhibit to the Amended Complaint, Cogent stated that "both in the year 2007 and in the year 2009 [DT] made its consent to an expansion of interconnection capacity contingent upon Cogent's refraining from competition in certain areas or, however, entering into transactions for a fee." *See* Am. Compl.

Ex. 3 at 8. Thus, the implied duty and oral contract claims are barred by the applicable three-year statute of limitations, and the written contract claims are barred by the five-year statute of limitations based on Cogent's own representations to the German regulator.

Second, Cogent's implied duty of good faith and fair dealing claims—Counts II and IV—should be dismissed because they are identical to Cogent's contract claims. Cogent bases its implied duty claims on the same conduct that it alleges demonstrates a breach of contract—*i.e.*, DT's alleged failure to remediate sustained congestion at the parties' interconnection points. As a result, the implied duty claims cannot stand as independent claims.

Third, Cogent's oral contract claims—Counts I and II—should be dismissed because the 2004 Oral Agreement is unenforceable under the express language of the 1999 Agreement. According to Cogent, the alleged 2004 Oral Agreement covers the same subject matter as the 1999 Agreement, and thus it cannot operate as an independent contract. And the 1999 Agreement requires all modifications to be in writing, *see* Am. Compl. Ex. 1 § 6.7, so the 2004 Oral Agreement would be unenforceable as an amendment.

Finally, the Court lacks personal jurisdiction over any Cogent claims relating to the 1999 Agreement. The <u>only</u> basis for filing suit in this Court is the parties' interconnection in Ashburn. And while Cogent alleges that the 1999 Agreement was modified to include Ashburn in 2002 pursuant to § 3.1, Cogent fails to allege the existence of any such written modification as required by § 6.7. Thus, Cogent's claims under the 1999 Agreement lack any nexus to Virginia. And under the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), because DT is neither incorporated nor headquartered here, jurisdiction fails. Cogent's Counts III and IV should be dismissed for this additional reason.

# BACKGROUND[2]

## I.   THE PARTIES' AGREEMENTS

Cogent and DT interconnect at eight locations: New York; Ashburn; Los Angeles, California; London, England; Paris, France; Amsterdam, Netherlands; Frankfurt, Germany; and Vienna, Austria.  *See* Am. Compl. ¶ 64.  Cogent alleges that these interconnection points are governed by the 2004 Oral Agreement or, alternatively, the 1999 Agreement.[3]  *See id.* ¶¶ 64, 65.

### A.   1999 Agreement

Cogent alleges that in 1999, DT entered into a written ISP Peering Agreement with a now-defunct Virginia internet service provider, PSINet.  *See id.* ¶¶ 38-41.  The parties entered into the agreement, *inter alia*, "to exchange data traffic between their respective networks in order to enable their respective customers to communicate more efficiently with each other."  *See* Am. Compl. Ex. 1 at 1.  According to Cogent, it acquired the 1999 Agreement from PSINet in bankruptcy in 2002, making it the "successor in interest to that contract."  Am. Compl. ¶¶ 42-43.

Cogent contends that the 1999 Agreement covered the parties' New York interconnection at the time it was acquired by Cogent in 2002.  *Id.* ¶ 44.  The agreement is "governed by the substantive law of the State of New York, USA without reference to its principles of conflicts of law and may be modified only in writing signed by both Parties."  Am. Compl. Ex. 1 § 6.7.  Cogent further alleges that the parties began interconnecting at Ashburn under the 1999 Agreement in 2002 "consistent with Section 3.1."  Am. Compl. ¶ 45.  Section 3.1 provides that "[t]his Agreement contemplates the initial physical connection(s) will be at the following

---

[2]  DT accepts as true the factual allegations of the Complaint only for purposes of this Motion.

[3]  Cogent's allegations are also suspect because Cogent has not only changed its story, but even in is Amended Complaint, Cogent cannot decide what agreement applies.  Such vague and crafty pleading is not sufficient to avoid dismissal for the reasons stated herein.

location(s), but the Parties may subsequently agree to connect at more locations than those specified below." Am. Compl.Ex. 1 § 3.1.  It then lists "Telehouse or Herndon (still to decide) . . . New York/Virginia;" "PSI Network Europe, Germany (INX) . . . Berlin or Frankfurt;" and "Telehouse London/UK . . . UK."  *See id.*  Cogent has not alleged the existence of any written modification to include Ashburn or any other interconnection point under the 1999 Agreement.

### B.    Alleged 2004 Oral Agreement

Cogent alleges that today all of the parties' interconnection points—including the interconnection points in Ashburn and New York—are governed by the 2004 Oral Agreement. Am. Compl. ¶¶ 60-61.  According to Cogent, even though (1) the 2004 Oral Agreement covers the same subject matter as the 1999 Agreement (*i.e.*, the New York and Ashburn interconnections), (2) modifications to the 1999 Agreement must be in writing, and (3) the 1999 Agreement was never terminated, the 2004 Oral Agreement supersedes the 1999 Agreement. *See id.* ¶ 59.  However, Cogent also alleges that "should the finder of fact conclude that the parties' discussions in 2004 were insufficient to create a new agreement, the parties' conduct over the past fourteen years has been governed by the 1999 Agreement."  *Id.* ¶ 65.

## II.    PROCEDURAL HISTORY

Cogent filed its original Complaint on December 8, 2015.  *See* Dkt. No. 1.  It alleged that the 1999 Agreement governed only the New York interconnection point, *see* Compl. ¶ 29, and that the remaining interconnection points were governed by an "implied-in-fact and/or oral agreement."  *Id.* ¶ 40.  With respect to the Ashburn interconnection—*i.e.*, the only basis for jurisdiction in this Court—Cogent alleged that the parties had "exchanged data in Ashburn, Virginia since February 2005."  *See id.* ¶¶ 40, 42.  The original Complaint included four counts: breach of the 1999 Agreement, breach of the "implied-in-fact and/or oral agreement," and breach of the implied duty of good faith and fair dealing in each agreement.  *See id.* ¶¶ 76-105.

Cogent's original Complaint did not mention the parties' 2003 Agreement.

On March 14, 2016, DT filed two motions to dismiss.  The first sought dismissal under the doctrine of *forum non conveniens* and for lack of personal jurisdiction based on the forum selection provision found in the parties' 2003 Agreement.  *See* Dkt. Nos. 10-12.  The second motion sought dismissal of Cogent's oral contract and implied duty claims under Fed. R. Civ. P. 12(b)(6) because Cogent failed to allege sufficient terms to establish the existence of an enforceable agreement and because the claims were untimely, violated the statute of frauds, and were expressly prohibited by the 1999 Agreement.  *See* Dkt. Nos. 13-15.  Rather than respond to DT's motions, Cogent pursued an amended complaint.  Cogent filed its Amended Complaint on April 4, 2016.  *See* Dkt. No. 20.

The Amended Complaint alleges an entirely different contractual arrangement between the parties than what was alleged in the original Complaint.  Cogent now alleges that the 1999 Agreement governed both the New York and Ashburn interconnections beginning in 2002, Am. Compl. ¶¶ 44, 45, and that the 1999 Agreement was ultimately "replaced" by the 2004 Oral Agreement, *id.* ¶ 59.   The Amended Complaint now mentions the 2003 Agreement.  *See id.* ¶¶ 73-79.   In addition to alleging for the first time the existence of a single oral agreement governing all of the parties' interconnections (as opposed to multiple oral or implied-in-fact agreements in the original Complaint), Cogent now alleges that the agreement was executed in the District of Columbia by Cogent employee Art Giannopoulos, *see id.* ¶ 51, and that the agreement is terminable at will by either party, *see id.* ¶ 57.

Cogent raises four claims.  Counts I and II allege breach of the 2004 Oral Agreement and breach of the implied duty of good faith and fair dealing in that agreement.  *See id.* ¶¶ 97-109. Counts III and IV allege breach of the 1999 Agreement and breach of the implied duty in that

agreement. *See id.* ¶¶ 110-125. Cogent alleges that DT breached the express terms of the oral agreement, as well as the implied duty of good faith and fair dealing in that agreement, by refusing to mitigate sustained congestion through augmenting interconnection capacity. *Id.* ¶¶ 99; 108. To hedge its bets, Cogent alleges that if the oral agreement is no longer in effect, the same acts breached both the express terms of the 1999 Agreement and the implied duty in that contract. *Id.* ¶¶ 114, 122.

## STANDARD OF REVIEW

### I.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pled allegations in adjudicating such a motion, but it need not credit allegations that are merely conclusory. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted to be true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A claim only has facial plausibility when the plaintiff pleads facts that allow the court to draw a reasonable inference that defendant is liable for the misconduct alleged. *Id.* "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails. *Id.* at 679; *see also Jones v. Shooshan*, 855 F. Supp. 2d 594, 599 (E.D. Va. 2012) (Brinkema, J.).

### II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

## ARGUMENT

### I.    COGENT'S CLAIMS ARE UNTIMELY.

On the face of the Complaint, each of Cogent' claims should be dismissed as untimely.

*See, e.g.*, *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (dismissing a claim as

untimely where the facts necessary to show the time bar appear on the face of the complaint); *see*

*also Jones*, 855 F. Supp. 2d at 601-02 (dismissing a breach of contract claim as time-barred).  "In

Virginia, it is well-settled that the limitations period is treated as a procedural issue governed by

Virginia law."  *Hunter Innovations Co. v. Travelers Indem. Co.*, 753 F. Supp. 2d 597, 602 (E.D.

Va. 2010) (citing *Hansen v. Stanley Martin Cos.*, 585 S.E.2d 567, 571 (Va. 2003)).

Virginia applies a five-year statute of limitations to written contracts, and a three-year

statute of limitations to all unwritten contracts, both express and implied.  Va. Code Ann. § 8.01-

246.[4]   The three-year statute of limitations also applies to claims for breach of the implied

covenant of good faith and fair dealing, even if the claim is alleged as part of a written contract.

*See Corinthian Mortg. Corp v. ChoicePoint Precision Mktg., LLC*, Case No. 1:07-cv-832 (JCC),

2008 WL 2776991, at *3 (E.D. Va. July 14, 2008).  An action for breach accrues for purposes of

determining the timeliness of a claim on the date "when the breach of contract occurs in actions

*ex contractu* and not when the resulting damage is discovered."  Va. Code Ann. § 8.01-230; *see*

*Corinthian*, 2008 WL 2776991, at *3-4 (applying statute of limitations from when the breach of

the implied duty occurred).  "Virginia law . . . provides that statutes of limitation are strictly

---

[4] "Virginia has enacted a 'borrowing statute' that 'limits actions on contracts governed by the law of another state to the limitations period of that state if its time limit is more restrictive than Virginia's.'"  *Hunter Innovations*, 753 F. Supp. 2d at 602 (quoting *Hansen*, 585 S.E.2d at 572 (citing Va.Code § 8.01–247)).  Here, even if the alleged oral contracts are governed by District of Columbia law as Cogent claims, the District of Columbia's statute of limitations on oral contracts is also three years.  D.C. Code § 12-301(7).  With respect to the 1999 Agreement, New York law applies a six-year statute of limitations, which is more lenient than Virginia's law and therefore not considered under the borrowing statute.  *See* N.Y. C.P.L.R. § 213(2).

enforced and exceptions thereto are to be construed narrowly." *Hunter v. Custom Bus. Graphics*, 635 F. Supp. 2d 420, 431 (E.D. Va. 2009).

In its original Complaint, Cogent alleged that "[s]tarting in late 2011 . . . DT stopped upgrading the ports used to interconnect and exchange traffic with Cogent." Compl. ¶ 56; *see also id.* ("[S]ince November 2011, DT has not added any capacity at its interconnection points with Cogent." (emphasis in original)); *id.* at 2 ("DT has declined to expand interconnection capacity with Cogent since 2011."). After DT moved to dismiss the original Complaint as time-barred, Cogent now alleges that "[f]or at least the past three years, network-wide congestion has occurred in different periods of time and prevented customers from effectively accessing the entire Internet." Am. Compl. ¶ 82.

Cogent's own allegation that DT's alleged conduct has existed "for at least the past three years" concedes that the oral contract and implied duty claims against DT are time-barred by a three-year limitations period. Moreover, Cogent has attached as an exhibit to its Amended Complaint a filing Cogent made before Germany's FNA in which Cogent stated that "both in the year 2007 and in the year 2009 [DT] made its consent to an expansion of interconnection capacity contingent upon Cogent's refraining from competition in certain areas or, however, entering into transactions for a fee." *See* Am. Compl. Ex. 3 at 8. In other words, Cogent knew of its alleged claims against DT in 2007 and 2009. *See id.* Thus, the Amended Complaint contains an admission that Cogent believed that DT breached the 1999 Agreement, the alleged 2004 Oral Agreement, and implied covenant of good faith—both with respect to the 1999 Agreement and the alleged oral agreement (*i.e.*, Counts II and IV)—more than eight years before it filed this action. Therefore, it is evident on the face of the Complaint that all of Cogent's claims are outside of the statute of limitations, and should be dismissed.

## II. COGENT'S IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING CLAIMS−COUNTS II AND IV–SHOULD BE DISMISSED BECAUSE THEY MIRROR COGENT'S CONTRACT CLAIMS.

Cogent's implied duty claims—Counts II and IV—should also be dismissed because they are identical to Cogent's contract claims.  Under District of Columbia law,[5] "breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under [an] established cause of action." *Xereas v. Heiss*, 933 F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, Civil Action Nos. 04–838, 04–687(RCL), 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006)).  Similarly, under New York law,[6] "[b]reach of the duty of good faith and fair dealing 'is merely a breach of the underlying contract, and a claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.'" *Spandex House, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 14 CIV. 4251 PAC, 2015 WL 509678, at *2 (S.D.N.Y. Feb. 6, 2015) (quoting *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F.Supp.2d 344, 365 (S.D.N.Y. 2012)).  "A claim for breach of the duty of good faith can only survive a motion to dismiss if it is based on allegations that differ from those underlying an accompanying breach of contract claim." *Id.* (internal quotation omitted).

Here, Cogent's implied duty claims overlap entirely with its contract claims.  Cogent's

---

[5] Cogent alleges that District of Columbia law applies to its implied duty claim based on the 2004 Oral Agreement, Am. Compl. ¶ 102, presumably because it alleges that Cogent entered into the contract in the District of Columbia, *id.* ¶ 51.  *See also O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).  While the Court need not accept this legal conclusion as true, *see Jones*, 855 F. Supp. 2d at 599, for purposes of this motion, DT assumes that District of Columbia law will apply in determining the validity of Cogent's oral contract claims.

[6] Section 6.7 of the 1999 Agreement provides that the agreement is "governed by the substantive law of the State of New York, USA without reference to its principles of conflicts of law[.]" Am. Compl. Ex. 1 § 6.7.

Amended Complaint includes no implied duty allegations that differ from its breach of contract allegations. Moreover, Cogent alleges that DT breached the implied duty in the same way it breached the alleged contracts—*i.e.*, by refusing to mitigate sustained congestion through augmenting interconnection capacity. *See* Am. Compl. ¶¶ 99, 108, 114, 122. Because the implied duty claims are identical to the contract claims on the face of the Amended Complaint, they should be dismissed.

### III.   THE ALLEGED 2004 ORAL AGREEMENT IS UNENFORCEABLE UNDER THE EXPRESS TERMS OF THE 1999 AGREEMENT.

Counts I and II are unenforceable under the terms of the 1999 Agreement. The 1999 Agreement expressly states that it governs the parties' entire interconnection relationship. *See* Am. Compl. Ex. 1 § 2.1.2 ("The Parties shall cooperate and coordinate their activities to facilitate interconnectivity among the direct customers of each Party."). It contemplates that "the Parties may subsequently agree to connect at more locations than those specified." *Id.* § 3.1.

As pled, the alleged 2004 Oral Agreement is nothing more than an amendment to the 1999 Agreement. Cogent alleges that the 2004 Oral Agreement governs the exact same subject matter as the 1999 Agreement—the interconnection of the parties' networks—simply with expanded reach. *See id.* ¶ 59 ("While neither party has formally terminated the earlier, written 1999 Agreement, it has been replaced by the parties' subsequent Oral Agreement to expand their relationship in the wake of Cogent's Gatel acquisition."). Indeed, Cogent expressly says as much. *See id.* ¶ 65 ("[T]he parties' conduct over the past fourteen years has been governed by the 1999 Agreement." (emphasis added)); *see also Casciano v. JASEN Rides, LLC*, 109 F. Supp. 3d 134, 141 n.2 (D.D.C. 2015) (finding that an express contract could preclude a similar implied-in-fact contract (citing *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (foreclosing the possibility that there could be an entirely new implied-in-fact contract covering

the same subject matter as an express contract, because "[i]t is well settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract")); *AEB & Assocs. Design Grp., Inc. v. Tonka Corp.*, 853 F. Supp. 724, 731 (S.D.N.Y. 1994) ("An implied-in-fact contract arises in the absence of an express agreement, and is based on the conduct of the parties from which a fact-finder may infer the existence and terms of a contract. [T]he prerequisite for such a contract is that there be no express agreement dealing with the same subject matter." (internal quotation omitted)).

As a result, under the plain terms of the 1999 Agreement, the alleged 2004 Oral Agreement is unenforceable.  That is, the 1999 Agreement mandates that it "may be modified only in writing signed by both parties."  Am. Compl. Ex. 1 § 6.7 (emphasis added).  Therefore, Counts I and II should be dismissed for this additional reason.  *See First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs., Inc.*, No. 07-CV-2083, 2011 WL 1260223, at *4 (E.D.N.Y. Mar. 30, 2011) ("Where . . . a contract requires modifications to be effectuated in a signed writing, oral modifications are prohibited." (citing McKinney's General Obligations Law § 15-301 (2010)).

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER COGENT'S CLAIMS BASED ON THE 1999 AGREEMENT.

Cogent's remaining claims based on the 1999 Agreement—Counts III and IV—should also be dismissed for lack of personal jurisdiction.  "The Fourth Circuit has held that the Virginia long-arm statute is coextensive with the Constitution's due process requirements, and as a result, 'the statutory and constitutional inquiries [regarding personal jurisdiction] coalesce into the question of whether [defendants] had sufficient minimum contacts with Virginia to satisfy due process requirements.'"  *AdvanFort Co. v. Mar. Exec., LLC*, No. 1:15-cv-220, 2015 WL

4603090, at *9 (E.D. Va. July 28, 2015) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).   Whether or not a defendant has "sufficient minimal contacts" to establish personal jurisdiction depends on whether its contacts form the basis of the suit.   *See Carefirst*, 334 F.3d at 397.   If they do, the defendant may be subject to so-called "specific jurisdiction."   *See id.*

 "If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state."   *Id.*   As the Supreme Court recently explained in *Daimler*, a corporation is subject to general personal jurisdiction only in the location "in which the corporation is fairly regarded as at home."   134 S. Ct. at 760.   The relevant inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."   *Id.* at 761 (internal quotation omitted).   As a practical matter, then, general personal jurisdiction exists with respect to corporations where they are headquartered or incorporated.   *See id.* at 750.

Here, Cogent's only basis for specific personal jurisdiction in this Court is the parties' Ashburn interconnection.   Cogent alleges that "Cogent and DT added an interconnection location in Ashburn, Virginia consistent with Section 3.1 of the 1999 Agreement."   Am. Compl. ¶ 45. That section provides that "the Parties may subsequently agree to connect at more locations than those specified below."   Am. Compl. Ex. 1 § 3.1.

However, the 1999 Agreement also expressly states that it "may be modified only in writing signed by both Parties."   *Id.* § 6.7.   And Cogent has failed to allege the existence of any written modification to the 1999 Agreement to include Ashburn.   *See First Data*, 2011 WL

1260223, at *4.  Thus, under Cogent's own allegations, the 1999 Agreement never governed the Ashburn interconnection, and the Court lacks specific personal jurisdiction over Cogent's claims under the 1999 Agreement.

Moreover, under *Daimler*, Cogent's personal jurisdiction allegations also fail to establish general personal jurisdiction.  If DT—which is incorporated in Germany with its headquarters in Bonn—operates to a limited extent in Virginia, that is insufficient to render it "at home" in Virginia.  Indeed, if simply operating an interconnection router in Virginia sufficed to establish personal jurisdiction, DT would also be "at home" in New York, Los Angeles, London, Paris, Amsterdam, Frankfurt, and Vienna.  *Daimler* forecloses that possibility.  *See Daimler*, 134 S. Ct. at 761-62 ("If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"); *see also, e.g.*, *Crussiah v. Inova Health Sys.*, No. CV-TDC-14-4017, 2015 WL 7294368, at *4 (D. Md. Nov. 19, 2015) (finding that the defendant was not at home in Maryland despite providing medical services and advertising there).[7]

## CONCLUSION

FOR ALL THE FOREGOING REASONS, Defendant DT respectfully requests that this Court grant its Motion to Dismiss the Amended Complaint for Failure to State a Claim, dismiss the Amended Complaint, award DT its attorneys' fees and costs incurred with respect to this Motion, and grant such further relief as this Court deems proper.

---

[7] For this same reason, to the extent Cogent alleges the existence of an oral agreement or agreements related to interconnection points in locations other than New York and Ashburn, that agreement(s) should also be dismissed for lack of personal jurisdiction.

Dated:  April 25, 2016

DEUTSCHE TELEKOM, AG
By counsel


      /s/ Attison L. Barnes III
Attison L. Barnes, III (VA Bar No. 30458)
Stephen J. Obermeier (VA Bar No. 89849)
Wiley Rein, LLP
1776 K Street, NW
Washington, DC  20006
Tel:   (202) 719-7000
Fax:  (202) 719-7049
abarnes@wileyrein.com
sobermeier@wileyrein.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2016, I served the foregoing document electronically and via hand delivery on the following:

Robert M. Cooper
Scott E. Gant
Hershel A. Wancjer
James A. Krachenbuehl
Boise, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW
Washington, D.C. 20015
(703) 237-2727
rcopper@bsfllp.com
sgant@bsfllp.com
hwancjer@bsfllp.com
jkraehenbuehl@bsfllp.com

I further certify that on April 25, 2016, I served the foregoing document electronically on the following:

Scott D. Helsel
Walton & Adams, P.C.
1925 Isaac Newton Square, Suite 250
Reston, Virginia 20190
(703) 790-8000
shelsel@walton-adams.com

_____
/s/  Attison L. Barnes III
Attison L. Barnes III